## Case No. 12,119.

RUGGLES v. GENERAL INTEREST INS. CO.

[4 Mason, 74.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1825.[2]

MARINE INSURANCE — AFTER LOSS OF VESSEL — GOOD FAITH — FRAUD OF MASTER.

1. Where insurance was effected on a vessel, which had been previously totally lost, but the owner, at the time of procuring the insurance, had no knowledge of the loss, but acted with entire good faith in procuring the insurance: *Held*, that the omission of the master to communicate intelligence of the loss, although such omission was wilful, and with a fraudulent design to enable the owner to make insurance after the total loss, did not render the policy void, or preclude the owner from a recovery.

2. Also *held*, that it was the duty of the master to give information of the loss to his owner

---

[1] [Reported by William P. Mason, Esq.]
[2] [Affirmed in 12 Wheat. (25 U. S.) 408.]

as soon as he reasonably could, and that his omission to do so was a plain departure from his duty.

This was an action on a policy of insurance, dated the 9th of February, 1824, for 3,000 dollars, on the sloop Harriet, lost or not lost, at and from Newport in Rhode-Island, to, at, and from, all ports and places, to which she may proceed, in the United States, during the term of six months, beginning on the 12th of January, 1824. Also, 600 dollars property on board said sloop, at and from Newport to Charleston or Savannah, or both. On the 19th of the same January, the vessel was wrecked on Cape Hatteras, whilst proceeding on her voyage, and both vessel and cargo lost. An abandonment was duly made, and a total loss claimed. It appeared in evidence, on the trial, that the master, after the loss, expressed his determination not to give any notice of the loss to the owner, in order that the owner might effect insurance before the fact was known, and also took other means to prevent its becoming public.

Hubbard & Sohier, for defendants, contended, that this wilful omission, on the part of the master, to give notice of the loss to the owner, with the fraudulent intent of enabling him to make insurance, avoided the policy. They also contended, that there had been a fraudulent concealment or misrepresentation of material facts by the owner, which would likewise render the policy void.

Webster & Bliss, for plaintiff, è contra.

STORY, Circuit Justice, in summing up the cause, gave a separate opinion upon the points of law, as follows:

It is argued by the counsel for the defendants, 1. That, after the loss, the master wilfully omitted to communicate intelligence of it to the owner, with the fraudulent design to enable him to make insurance, which conduct, although the owner be entirely innocent and unknowing of the act or intent of the master, and of the loss, avoided the policy bonâ fide made by the owner after the loss. In support of this doctrine various cases are cited. And first, the case of Fitzherbert v. Mather, 1 Term R. 12. That case is distinguishable from the present. It turned upon the point, that a letter, written on the 16th of September, and sent by the post at 12 or 1 o'clock p. m. of the 17th of the same month, after the loss was known (though the loss took place after the letter was written), was a misrepresentation avoiding the policy, and that such misrepresentation, arising from the act of the plaintiff's agent, connected with the making of the insurance, bound him. Lord Mansfield said, that the underwriter was warranted, on the information of the agent, in believing, that the vessel was safe at noon of the 17th; the case is the same as if the principal had produced the letter of the 16th

to the underwriter. But in this case no letter was written or shown, and no representation made. Secondly, Gladstone v. King, 1 Maule & S. 35, is cited. In that case a letter was written by the captain, and received by the owner (and of course presumed to be shown to the underwriter), in which no notice was taken of an antecedent partial loss. The owner procured a policy covering all risks from the commencement of the voyage. The question was, whether the partial loss could be recovered. The court held, that it could not be; and the decision was in principle right; for it falls directly within the authority of the case in 1 Term R. 12. There was an implied warranty on the part of the owner, that there was no loss up to the time of writing that letter. The underwriter had a right to presume it. It is true, that in this case it is not stated, that the underwriter saw the letter of the captain. Neither is it stated, in the case of Fitzherbert v. Mather, that the letter in that case was seen by the underwriter. But the reasoning of the court implies its materiality to the risk. The case is imperfectly reported. But the court did not proceed on this general ground. They held, not that the policy was void for this concealment, but that the loss was an exception from the policy. This doctrine is new. It was so admitted by the court, and it is inconsistent with 1 Term R. 12 (which was not cited), where the policy was held void. It stands on no principle. If the concealment was material, then the policy was void. If it was a case of warranty of safety to that time, then it should have been put on that ground. If it was a case of misrepresentation, then the policy was void. The court say, "that otherwise fraudulent collusions might exist." But that goes to the extent of making the whole policy void. The court also say, that "what is known to the agent is impliedly known to the principal, and that the captain knew and might have actually communicated to the plaintiff the cause of damage." To the extent thus stated, the doctrine is not law. The knowledge of an agent is knowledge of the principal so far only as the agency extends. 1 Marsh. C. P. 466. The master is not the agent of the owner as to insuring; otherwise the owner could never insure after a loss, though it was unknown formally to him. The law is clearly otherwise. But the case is unlike the one at bar. Here the captain never wrote at all. Mr. Scarlett puts the case on the argument, that the omission to communicate the accident, when the captain wrote, amounted to no more than not writing at all, which, he said, would not vitiate the policy. The court did not deny, that an omission to write at all would not make the policy void. It is material also to state, what will be important hereafter, that Lord Ellenborough says, it makes no difference in such a concealment by the master, whether it be by fraud or negligence. The third case cited is

Andrews v. Marine Ins. Co., 9 Johns. 32. This was a joint insurance on account of the master, who was a part owner, as well as of the other owners. The argument of the counsel is not given. The court held, that there was no fraud in the master's omission to give intelligence of the loss; that he exercised ordinary diligence, though the delay was long. So far as the report goes, the court put the question, as one argued as a constructive fraud. Of or by whom was the fraud? Certainly by the party insured. It does not appear, whether the plaintiffs were merely part owners or partners; they are called the former in the statement of facts; the latter in the opinion of the court. Now, on a joint insurance for all the plaintiffs, a fraudulent act, or omission of duty, must affect all, and the same would be the case in partnerships generally; and so it seems to have been argued as to partners insuring together in this case. The court do not appear to have considered the point now before this court. In this case there is no joint insurance; the master is neither a part owner, nor insured. nor a party to the suit. Fourthly, Stewart v. Dunlop, 4 Brown, Parl. Cas. 483, note. The insurance in this case was procured by means of the clerk, who wrote, by direction of the owner, the letter for insurance, after he had had a communication with Brog, which must have led him to suppose that there was a loss. The court must have proceeded upon the ground, either that the plaintiff knew of the loss, or that his clerk, his agent, in writing for the insurance, knew of the loss. Marshall thinks the latter was the opinion of the court (page 469); so Park. Ins. p. 277. The editor of Brown thinks the decision founded on deception or fraud. The reporters in 1 Term R. 15, note, evidently, in their quære, put it as a case of knowledge in the principal, and I cannot but think, that this was the opinion of the court. The inference of knowledge on the part of the owner appears to me irresistible.

No other authorities have been produced. The point now before the court is therefore untouched by any adjudication. We must then consider it on general reasoning. The principle contended for is new. If well founded, it must have often occurred. The general silence, therefore, is against it, but not decisive of its merits. Upon what grounds does it stand? Not upon the ground of agency, for the master was not the agent as to the insurance. Not upon the ground of imputed knowledge or fraudulent concealment, for that is excluded by the argument. It must then be upon the ground, that the act of the master binds the owner; and that an omission of duty to his owner, by which third persons are prejudiced, destroys the rights of his owner, however innocent he may be. There is certainly no public policy or convenience in such a principle. The owner does not guaranty the fidelity of the master to all the world, or to the insurer in particular.

On the contrary, the insurer sometimes insures against the misconduct of the master. In England it is generally so as to barratry, and in some cases as to negligence. For what reason should the law interfere between two innocent persons to change a loss, which, by contract, one has engaged to bear? It is said, that he who reposes the confidence in such a one should bear the loss. But underwriters, equally with owners, repose confidence in the masters. The master is the agent for all concerned. In case of loss, he acts for all concerned. In the case of an abandonment, he is retroactively the agent of the underwriter, from the time of the loss on which the abandonment is founded. What reason is there, why owners, acting innocently, may not insure against bonâ fide losses, of which the master withholds the knowledge? It is said, it may encourage fraud. But this argument supposes too much. Most losses in this age must be public. The first port of arrival brings all out. The crew and officers, and other persons, are not bound to silence. In fact but few cases of this defence have yet occurred. But suppose it to be so. If there may be frauds, may there not be also ruinous losses to innocent owners? Is it a good public policy to endanger the interests of commerce by new implied warranties? The underwriter can require a warranty, or except the master's acts, or require his negligence to be fatal. This very case shows how difficult it is to conceal the facts even in an obscure place. They were universally known in twenty days, and reported in a loose rumor in twelve days.

The court is called upon to lay down a new principle, to extend the present boundaries. But I see no analogies to lead me farther, and no public policy indispensably requiring a stricter rule. If a fraudulent omission avoids the insurance, so would negligence. 1 Maule & S. I am ready to declare my opinion against the general principle, as argued by the defendant. But as the plaintiff has in his argument restricted it to the facts of the present case, I do not wish to go beyond them. My opinion is, that in the present case, where there has been an abandonment in due time for a loss really total, if the owner, at the time of procuring the insurance, had no knowledge of the loss, but acted with entire good faith in procuring the insurance, he is not precluded from a recovery, nor is the policy void by the omission of the master to communicate intelligence of the loss, although such omission was wilful and with the fraudulent design to enable the owner to make insurance after the total loss, the owner not being conusant of any such act or design at the time of such insurance. My opinion also is, that it was the duty of the master to give information of the loss to his owner as soon as he reasonably could, and that his omission was a plain departure from his duty.

2. A second defence is, that there has been

a fraudulent concealment or misrepresentation of material facts by the plaintiff. It is material to state what concealment and misrepresentations vitiate the policy.

1. Concealment must be of material facts, such as would influence the minds of prudent and intelligent underwriters, either not to underwrite at all, or not at the same premium. The law is the same of material rumours. Holt, N. P. 283. But in both cases the facts and rumours must be such as one party privately knows, and the other is ignorant of, and has no opportunity of knowing, or no reason to suspect. If, therefore, they are or may be equally known to both parties, being public news, generally stated, the insured need not disclose them. General news stated in the newspapers, and open to all, need not be stated, unless there be something which the plaintiff knows applies peculiarly to his own case. Durrell v. Bederley, Holt, N. P. 283; 14 East, 494. News posted at Lloyd's need not be told, such as the arrival of a vessel which sailed at the same time with the vessel insured. Friere v. Woodhouse, Holt, N. P. 572. Mere fears, unless founded on some peculiar facts, need not be communicated. If the facts are disclosed, it is sufficient. Bell v. Bell, 2 Camp. 475. Nor need fears that the vessel is out of time. Klein v. Lancaster Ins. Co., Whart. Dig. p. 319, pl. 28. Nor that a gale or gales of wind had occurred, unless the party has particular information not in possession of the public or the underwriter. Moses v. Delaware Ins. Co. [Case No. 9,872]; Whart. Dig. p. 319, pl. 18. Nor need general facts be communicated, such as the state of the weather, gales, hurricanes, political news, &c. of which the underwriter has the same means of knowledge as the underwritten. Marsh. Ins. 473; Park. Ins. 251; 3 Burrows, 1905. But if the party has information of gales connected with the risk or sailing of the vessel, which are not known to the underwriter, nor are supposed to be known to him, he must disclose the information, or the policy will be void. Ely v. Hallett. 2 Caines, 57.

What are the facts concealed in the present case? 1. The news stated in the New York newspapers of the 3d of February, and in the New England Palladium, printed at Boston, of the 6th of February. It is as follows: "That a schooner, supposed to be from the West Indies with molasses, and a sloop from the northward, were cast away on the night of the 26th ult. (Jan.) at Ocracock. Part of the cargo of the schooner was saved, and her crew. The crew of the sloop abandoned her the same night. The wind shifted, and she was blown off to sea. Nothing could be seen of her the next morning." It is said the plaintiff had seen this news, because he took the newspapers or saw them. The same presumption applies to the defendants. These were public facts open to both parties. Why was the plaintiff bound to communicate these facts? "A sloop from the northward" is so general, that though it might excite fears,

it could lead to no particular application of the loss. The insurance asked for was on his sloop, and it must have been known to both parties, that by probability she might be on the coast. But the fact is stated to have occurred on the 26th ult., whereas the sloop sailed on the 12th, and was lost on the 20th, and both parties might well have presumed, that the sloop on the 26th was beyond the place where the loss is stated to have happened. But the disclosure of the facts is not proved to be material to the risk. This is necessary. Neither the court nor jury can presume it. 2. Another concealment stated, is, that there had been a gale two days after the sailing of the sloop. This is not proved to have been known to the plaintiff at Newport. If known there, it must also have been known at Boston, for it was published in the newspapers. Severe gales were known, after the sailing of the vessel, to have occurred on the coast. This was stated in the newspapers, and is also proved by the refusal of other insurance offices to underwrite. The defendants must be presumed to know these facts. It is not proved to have been material to be disclosed, even if the fact of severe gales had been unknown to the underwriter. 3. Another concealment stated, is, that of the rumour of the loss of the vessel as stated by Gibbs, Fowler, &c. This properly falls under another head of defence, and I pass it over for the present. 4. Another concealment stated, is, that the plaintiff's sloop was a fast sailer. This was not stated to the underwriter, although the insured had spoken, in his letter of the 5th of February, of her other good qualities. But this is not proved to have been material; and if it were, the other expressions of her character make as much in her favour on this point.

We come next to the point of misrepresentation. It must be of facts material to the risk, or such as induce the underwriter to insure by misleading him. The misrepresentations relied on, are, 1st. The letter of insurance written in Boston in Mr. Thacher's store, dated as if at Newport on the 5th, and carried by an agent instead of the plaintiff. The circumstances, as stated by the agent, if believed, show that there was no fraudulent intention in this. The fact is not proved to vary the risk, or to create any material difference in it; and there was no change of facts in the mean time. The great point was, as to the vessel's being out of time. This fact was partially brought to the underwriter's consideration by Mr. Thacher; but the underwriter thought her not out of time, and made no further inquiries. And why should an insurance on the 9th, founded on a letter written on the 9th, vary a risk in such a case from a similar insurance founded on a letter written on the 5th? The letter was not sealed or postmarked, and did not purport to be an original; and no inquiries were made of the agent. 2. The manner of stating the vessel's going to Charleston, not saying that she was bound there, but only that she might go there, when in fact she was

cleared for that port, and had shipments on board to carry there, is also said to be a misrepresentation. Now this is not proved to have been material; and how could it be so since the policy asked, was to cover the risk to both Charleston and Savannah, leaving the underwriter to take his premium for both places? Nor is it proved that the vessel was materially more out of time if going to Savannah, than if going to Charleston and Savannah. 3. It is urged that the master was represented to be a first rate master, which he was not. But there is no proof that he was not; and since this loss, he has been again employed in a good service. 4. The statement, in the letter for insurance, that the risk was as good as any in the United States, when, it is said, the plaintiff did not think so, is stated as a misrepresentation. But the plaintiff says in the letter, not that the risk was as good, but that she, the vessel, was as good, &c.; and the vessel proved to be very good. Further, it is urged that the plaintiff's mind evidently had undergone changes as to his opinion of the risk; and yet, with a knowledge that other offices had refused it on account of gales and the vessel's being out of time, and he himself had authorized higher premiums to be given, he still affects to consider the risk a small one, and offers a low premium. But he was not bound to communicate his other offers, or his fears or hopes, but only to communicate any facts which justified them; and the material fact, as to time, was stated. Underwriters must judge for themselves as to matters of opinion. See Judge Watkins's opinion in Clason v. Smith, c. c. 1812; Whart. Dig. 320, pl. 20. Under the same head of concealment or misrepresentation may also be ranged the objection, that the plaintiff had, in his different applications, valued his vessel at $3000, $3600, and $4000. But there is no fraud in this; he had a right so to do. The vessel was in fact worth, as proved, $4000. This fact, however, properly belongs to the last and great point of defence; viz. that the plaintiff knew of the loss at the time of effecting the insurance; and this, if established, disposes of the whole case against the plaintiff. Fraud vitiates every policy; but it is not to be presumed, it must be proved; and the burthen of proof is on the underwriters.

The judge then went into a minute examination of all the facts on this head, and left them to the jury.

Verdict for the plaintiff.

[This judgment was affirmed by the supreme court. where it was carried on writ of error. 12 Wheat. (25 U. S.) 408.]